Dear Mr. Knox:
On behalf of the Brevard County Board of County Commissioners, you ask substantially the following question:
May the Board of County Commissioners advance funds to a charter school for the construction of school facilities with the condition that the funds be repaid from educational impact fees collected from a development that will create educational impacts mitigated by the charter school?
You state that the Board of County Commissioners has voted to award Odyssey Charter School, Inc., a Florida not-for-profit corporation, the sum of $2,239,698 in educational impact fees, pursuant to the provisions in section 1002.33(18)(f), Florida Statutes, for the construction of a school facility. The Brevard County School District objected to the award, arguing that Odyssey did not qualify for educational impact fees. As a result of dispute resolution proceedings, the district and county have tentatively agreed to a $1,000,000 payment to Odyssey, if the school is built to state requirements for educational facilities standards.[1]
Section 1002.33(18)(f), Fla. Stat., provides:
"To the extent that charter school facilities are specifically created to mitigate the educational impact created by the development of new residential dwelling units, pursuant to subparagraph (2)(c)4., some ofor all of the educational impact fees required to be paid in connectionwith the new residential dwelling units may be designated instead forthe construction of the charter school facilities that will mitigate thestudent station impact. Such facilities shall be built to the State Requirements for Educational Facilities and shall be owned by a public or nonprofit entity. . . . The owner of property planned or approved for new residential dwelling units and the entity levying educational impact fees shall enter into an agreement that designates the educational impact fees that will be allocated for the charter school student stations and that ensures the timely construction of the charter school student stations concurrent with the expected occupancy of the residential units." (e.s.)
The statute clearly allows educational impact fees to be used to fund the construction of charter school facilities that will mitigate the student station impact resulting from new dwelling units.[2] The question remains whether the county may advance county funds to a charter school for construction of school facilities under the condition that repayment will be made from educational impact fees to be collected in the future.
Article VII, section 10, Florida Constitution, prohibits the state or a county, municipality, special district or any agency thereof from lending or using its taxing power or credit to aid any private corporation, association, partnership or person. The purpose of this provision is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefitted."[3]
Thus, whether the constitutional prohibitions contained in ArticleVII, section 10, Florida Constitution, apply is dependent in part on whether a valid public purpose is involved. The determination of what constitutes a valid public purpose for the expenditure of public funds is one that must be made by the legislative body of the governmental entity. In this instance, it is the board of county commissioners, acting in its legislative capacity, that must make the determination that a loan of money to the Odyssey Charter School serves a valid county purpose.
In Attorney General Opinion 85-96, this office was asked whether a county could loan county funds to a city and the city's community redevelopment agency for a project undertaken under Florida's Community Redevelopment Act of 1969.[4] Finding that the Legislature, by passage of the act, had determined that community redevelopment serves a public purpose for which public funds may be spent, this office concluded that the county was authorized to loan properly appropriated county funds to a city and a redevelopment agency to aid in community development.
In order to supplement the educational opportunities of children, the Florida Legislature in 1996 authorized the creation of charter schools.[5] The statute, now codified at section 1002.33, Florida Statutes, allows for both the creation of new charter schools and the conversion of existing public schools to charter status.[6] Section1002.33, Florida Statutes, provides for the creation of such charter schools as part of the state's program of public education and considers such schools to be public schools.[7]
This legislative authorization evidences that a charter school serves a public purpose.[8] Coupled with the governing body's determination that the loan of county funds to the Odyssey Charter School to enable the construction of the charter school facilities fulfills a county purpose, it would appear that the county may loan county funds to the Odyssey Charter School for the construction of school facilities.
Accordingly, it is my opinion that the Brevard County Board of County Commissioners may advance funds to the Odyssey Charter School for the construction of school facilities with the condition that the funds be repaid from educational impact fees collected from a development that will create educational impacts mitigated by the charter school.
[1] The school district would release $107,715.46 of impact fees it holds, the county would release accumulated Bayside Lake impact fees amounting to $475,000 and the approximately $418,000.00 balance would be advanced to Odyssey from county funds to be repaid from future educational impact fees collected from the development.
[2] See Florida Charter Review Panel letter to Ms. Constance Ortiz, Odyssey Charter School, October 9, 2006.
[3] Bannon v. Port of Palm Beach District, 246 So. 2d 737, 741 (Fla. 1971).
[4] Part III, Ch. 163, Fla. Stat.
[5] See s. 1, Ch. 96-186, Laws of Fla.
[6] Section 1002.33(3), Fla. Stat.
[7] Section 1002.33(1), Fla. Stat. And see 1000.04(1), Fla. Stat., stating that the public K-12 schools include charter schools.
[8] Cf. Op. Att'y Gen. Fla. 2001-23 (records and meetings of a not-for-profit corporation granted charter school status are subject to the requirements of Chapter 119, Florida Statutes, and section 286.011, Florida Statutes).